CTJ (rg)
ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
JUN - 1 2016
12:03 pm
CLERK, U.S. DISTRICT COURT
By _____
        Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

JMO PROPERTY, LLC,                          )
                                            )
        *Plaintiff,*                        )
                                            )
v.                                          )   Case No.  4:16-cv-00074-A
                                            )
VRE CHICAGO ELEVEN, LLC, *et al.,*          )
                                            )
        *Defendants.*                       )

**PLAINTIFF'S CORRECTED OBJECTION TO
DEFENDANTS VRE CHICAGO ELEVEN, LLC'S AND VERDAD
REAL ESTATE, INC'S MOTION FOR LEAVE TO
<u>DESIGNATE RESPONSIBLE THIRD PARTIES</u>**

*Janna Ward Clarke*

Janna Ward Clarke
State Bar No. 20844150
309 West 7th Street, Suite 1100
Fort Worth, TX 76102
(817) 335-1615
(817) 335-1603 (fax)
E-mail: jwc@bsjpc.com


Gerald P. Greiman, *Pro hac vice*
Ryan C. Hardy, *Pro hac vice*
SPENCER FANE LLP
1 N. Brentwood Blvd., Suite 1000
St. Louis, MO 63105
(314) 863-7733
(314) 862-4656 (fax)
E-mail: ggreiman@spencerfane.com
        rhardy@spencerfane.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| JMO PROPERTY, LLC, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Case No. 4:16-cv-00074-A |
| | ) | |
| VRE CHICAGO ELEVEN, LLC, *et al.*, | ) | |
| | ) | |
| *Defendants.* | ) | |

## PLAINTIFF'S CORRECTED OBJECTION TO DEFENDANTS VRE CHICAGO ELEVEN, LLC'S AND VERDAD REAL ESTATE, INC.'S MOTION <u>FOR LEAVE TO DESIGNATE RESPONSIBLE THIRD PARTIES</u>

Janna Ward Clarke
State Bar No. 20844150
309 West 7th Street, Suite 1100
Fort Worth, TX 76102
(817) 335-1615
(817) 335-1603 (fax)
E-mail: jwc@bsjpc.com

Gerald P. Greiman, *Pro hac vice*
Ryan C. Hardy, *Pro hac vice*
SPENCER FANE LLP
1 N. Brentwood Blvd., Suite 1000
St. Louis, MO 63105
(314) 863-7733
(314) 862-4656 (fax)
E-mail: ggreiman@spencerfane.com
          rhardy@spencerfane.com

*Attorneys for Plaintiff*

SL 1937044.8

## TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

FACTUAL BACKGROUND .............................................................................................. 1

GROUNDS OF OBJECTION ............................................................................................. 6

I.    SECTION 33.004 DOES NOT APPLY TO JMO'S BREACH OF CONTRACT
      CLAIM ....................................................................................................................... 6

II.   SECTION 33.004 DOES NOT APPLY TO JMO'S FRAUDULENT
      MISREPRESENTION CLAIMS ASSERTED HERE ................................................ 6

III.  CHAPTER 33 DOES NOT APPLY TO JMO'S CLAIMS FOR PUNITIVE
      DAMAGES ................................................................................................................. 9

IV.   IN ANY EVENT, MOVANTS' RTP MOTION IS DFECTIVE IN ITS
      ENTIRETY FOR FAILURE TO ALLEGE FACTS SUFFICIENT TO SHOW
      HOW THE NON-PARTIES CAUSED OR CONTRIBUTED TO JMO'S
      INJURIES ................................................................................................................... 9

CONCLUSION ................................................................................................................... 11

CERTIFICATE OF SERVICE .......................................................................................... 13

SL 1937044.8

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Doncaster v. Hernaiz,*
    161 S.W.3d 594 (Tex. App. 2005)........................................................6

*Eisenstadt v. Tel. Elecs. Corp.,*
    2008 U.S. Dist. LEXIS 77038 (N.D. Tex. Sep. 30, 2008).........................9

*Gilcrease v. Garlock, Inc.,*
    211 S.W.3d 448 (Tex. App. 2006)........................................................9

*In re Jason Dominic LeVecke,*
    No. 2:16-bk-00639-DPC (Bkrtcy. D. Ariz. Jan. 25, 2016)....................4

*In re Smith,*
    366 S.W.3d 282 (Tex. App. 2012).......................................................11

*Johnson v. Baylor Univ.,*
    188 S.W.3d 296 (Tex. App. 2006).......................................................11

*Mills v. State,*
    722 S.W.2d 411 (Tex. App. 1986)........................................................7

*Nels Cary, Inc. v. Day,*
    2008 U.S. Dist. LEXIS 15928 (N.D. Tex. Feb. 29, 2008).......................6

*Pemex Exploracion Y Produccion v. BASF Corp.*
    2011 U.S. Dist. LEXIS 156655 (S.D. Tex. Oct. 20, 2011)......................7

*Tex. First Natl. Bank v. Ng,*
    167 S.W.3d 842 (Tex. App. 2005).......................................................11

STATUTES

Tex. Bus. & Com. Code Chapter 17 ......................................................6

Tex. Civ. Prac. & Rem. Code Chapter 33...........................................6, 9, 11

Tex. Civ. Prac. & Rem. Code § 33.002 ..................................................6

Tex. Civ. Prac. & Rem. Code § 33.002(c)(2)...........................................9

Tex. Civ. Prac. & Rem. Code § 33.004 .......................................... passim

Tex. Civ. Prac. & Rem. Code § 33.004(g)................................................9

Tex. Civ. Prac. & Rem. Code § 33.011(6)...............................................10

Tex. Civ. Prac. & Rem. Code § 33.013(b)................................................7

Tex. Civ. Prac. & Rem. Code § 33.013(b)(2)........................................6, 7, 8

Tex. Civ. Prac. & Rem. Code § 33.015 ...................................................7

SL 1937044.8

Tex. Civ. Prac. & Rem. Code § 41.001(5) .......................................................................9

Tex. Penal Code § 31.01(1) .............................................................................................7

Tex. Penal Code § 32.46 ...............................................................................................7, 8

Tex. Penal Code § 32.46(a)(1) .........................................................................................7

**OTHER AUTHORITIES**

"HOUSE BILL 4 SYMPOSIUM ISSUE: Responsible Third Parties," 46 Tex. L. Rev. 869
(Summer, 2005) ..........................................................................................................8

**PLAINTIFF'S CORRECTED OBJECTION TO DEFENDANTS VRE CHICAGO
ELEVEN, LLC'S AND VERDAD REAL ESTATE, INC.'S MOTION
<u>FOR LEAVE TO DESIGNATE RESPONSIBLE THIRD PARTIES</u>**

Plaintiff JMO Property, LLC ("JMO") submits the following as its Objection to Defendants VRE Chicago Eleven, LLC's ("VRE") and Verdad Real Estate, Inc.'s ("Verdad") Motion for Leave to Designate Responsible Third Parties (the "RTP Motion"). As discussed below, the statute on which VRE and Verdad (collectively, "Movants") rely, § 33.004 of the Tex. Civ. Prac. & Rem. Code, is inapplicable to certain of Plaintiff's claims asserted in this action. And, as to other of Plaintiff's claims, to which § 33.004 might apply, VRE and Verdad have failed to plead sufficient facts concerning the alleged responsibility of the persons sought to be designated to satisfy the pleading requirements of the Texas Rules of Civil Procedure.

## <u>FACTUAL BACKGROUND</u>

The factual background of this action, as alleged in JMO's Complaint (Doc. #1, "Compl."), may be summarized as follows. In 2014, Verdad – a large developer of commercial properties leased to single tenants such as fast food restaurants – acquired the property at issue in this case (the "Property"), along with other similar properties, from an entity owned and/or controlled by Jason LeVecke. (Compl. ¶¶ 2-3, 11-15). The Property is located at 10200 S. Halsted Street, in Chicago. (Compl. ¶¶ 15-16).

Verdad, through VRE,[1] paid $1,832,500 for the Property in April, 2014. At the time, the Property was leased to a LeVecke entity, Frontier Star, LLC ("Frontier Star"), for operation as a Kentucky Fried Chicken ("KFC") restaurant, under a lease dated in March, 2014. (Compl.

---

[1] Verdad effected the acquisition of the Property, as well as the ensuing sale, through a wholly owned subsidiary created by it, VRE, which was controlled entirely by Verdad, inadequately capitalized, and had no separate existence from Verdad. Jason Keen, a principal of Verdad and one of the six "team members" featured on Verdad's website, is the manager of VRE. Verdad and VRE are the alter ego of one another. (Compl. ¶¶ 13-14).

¶¶ 15-16). Less than a year later, in February, 2015, VRE and Frontier Star terminated the March, 2014 lease, and VRE entered into a new lease with another LeVecke entity, MJC Holdings 123, LLC ("MJC") (the "February 2015 Lease"), guaranteed by another LeVecke entity, Frontier Star 1, LLC ("FS1"), as well as by LeVecke personally. (Compl. ¶¶ 17, 19). The February 2015 Lease provided for payment of rent in the amount of $171,000 per year (for the first five years, and higher after that), which was substantially higher than the rent payable under the prior lease, and was unsustainable in light of the actual and expected volume of sales generated by the KFC restaurant on the Property. (Compl. ¶ 22).[2]

Verdad and VRE then proceeded to offer the Property for sale at a price of $2,631,000, which was 40 percent more than they had paid for the Property a year earlier, and marketed it to investors largely on the basis of it supposedly reflecting a capitalization rate of 6.5 percent, based on the offering price and the representation that it would generate rental income of $171,000 per year. (Compl. ¶ 25 and Exs. 2 and 3 thereto). Movants also touted the fact that the February 2015 Lease was guaranteed by FS1, and circulated financial information representing that, as of 2014, FS1 had a net worth of $70 million and annual operating profits of $14.9 million. (*Id.*).

On June 29, 2015, JMO and VRE entered into a Purchase and Sale Agreement ("Sale Contract"), pursuant to which JMO agreed to purchase the Property for $2,485,000 – which was $652,500, or 35 percent, more than VRE paid for the Property the previous year. The transaction closed on July 30, 2015. (Compl. ¶¶ 29, 34).

---

[2] VRE and Verdad allege in their Answer ("VRE/Verdad Ans.," Doc. #32), at ¶ 17, that the rent rates for the Property under the February 27, 2015 lease were the same as the rent rates under the March, 2014 lease. To the extent that is so, it is of no significance to JMO's claims in that VRE's and Verdad's Answer also makes clear that the March, 2014 lease was to be effective only upon VRE's acquisition of the Property. (VRE/Verdad Ans. ¶ 16). What is significant, for purposes of JMO's claims, is the difference between the rent rates to be charged after VRE's acquisition of the Property, as compared with the rent being paid pre-acquisition.

In August, 2015, shortly after the closing of the sale – and, indeed, in one of MJC's (the tenant) very first communications with JMO following JMO becoming its landlord at the Property – MJC told JMO it would not be able to make its minimum rent payments, and attempted to negotiate a severe rent reduction, from $171,000 to $70,000 per year. MJC, in fact, did not make its full August, 2015 minimum rent payment, and has made no rent payments for September, 2015 through the present. (Compl. ¶¶ 36-37).[3]

Significantly, on or about July 27, 2015 – *three days prior to the closing of the Sale Contract*, which occurred July 30, 2015 – Frontier Star filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. That bankruptcy case remains pending in the United States Bankruptcy Court for the District of Arizona. (Compl. ¶ 32).

Verdad – itself and through several subsidiaries – is a creditor of Frontier Star and received notice of Frontier Star's bankruptcy. Verdad and VRE knew of Frontier Star's and its affiliated entities' precarious financial position and potential bankruptcy, as well as Frontier Star's actual bankruptcy filing, prior to the date on which VRE and JMO closed on the sale of the Property under the Sale Contract, but did not disclose those facts to JMO. (Compl. ¶¶ 32-33, 41).[4]

On November 17, 2015, FS1 also filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, and that case also remains pending in the United States Bankruptcy Court for the District of Arizona. (Compl. ¶ 38). On or about January 25, 2016, LeVecke filed a

---

[3] In order to mitigate its damages, JMO has been required to take action, and incur expenses, to evict MJC from the Property and seek a replacement tenant for the Property. JMO now has been able to re-lease the Property, but has only been able to secure a tenant having the ability and willingness to pay rent in the amount of $75,600 per year. (Compl. ¶¶ 39-40).

[4] VRE and Verdad admit, in ¶ 33 of their Answer, that they learned of Frontier Star's bankruptcy filing on July 29, 2015 – which was prior to the closing of the sale of the Property to JMO.

SL 1937044.8

voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code. That bankruptcy case remains pending in the United States Bankruptcy Court for the District of Arizona. *See In re Jason Dominic LeVecke*, No. 2:16-bk-00639-DPC (Bkrtcy. D. Ariz. Jan. 25, 2016).

Based on the foregoing, there can be little question that JMO has been victimized by fraud. The only real question is whether Movants, LeVecke and various LeVecke entities were mutually involved in a fraudulent scheme that predated Movants' acquisition of the Property and other similar properties from LeVecke and his entities, or whether Movants were duped by LeVecke, and then decided to recoup or ward off their own losses by unloading the properties on unsuspecting buyers for inflated prices.

JMO asserts claims against Movants for fraud in the inducement as well as negligent misrepresentation and, in each instance, asserts both affirmative misrepresentations and omissions as the basis of its claims. (Compl. Counts I-IV). JMO also asserts a claim for breach of contract against Movants. (Compl. Count V). In that regard, JMO alleges breaches of a representation and warranty in the Sale Contract, that "neither [VRE] nor [MJC was] in default under the Lease nor [had] any event occurred that with the passing of time, giving of notice or otherwise would constitute a default under the Lease." (*Id.*).

The affirmative misrepresentations alleged in the Complaint may be summarized as follows (Compl. ¶ 45):

      a.    the brochure used to market the Property falsely represented that FS1 had substantial financial strength; that, as of 2014, FS1 had a net worth of nearly $70 million; and that, as of 2014, FS1 had an annual operating profit of nearly $15 million;

      b.    the offering circular for the Property falsely represented that Frontier Star was, and would be, the tenant of the Property; that the tenant of the Property operated 22 KFC restaurants in the Chicago Market; and that the tenant

SL 1937044.8

of the Property was one of the largest multi-unit franchise restaurant operators with over 200 locations; and/or

      c.    the offering circular for the Property falsely represented that the Property was generating, and would in the future generate, net operating income in the amount of $171,000 per year for the first five years, with net operating income for years 16-20 of the lease rising to $227,601 per year.

The omissions alleged in the Complaint may be summarized as follows (Compl. ¶ 53):

      a.    the February 27, 2015 lease provided for payment of rent at a level higher than the rent under the previous lease, higher than the fair market rental value of the Property, and higher than what a KFC franchisee operating at the Property could expect to be able to pay out of operating revenues, and the artificially high rent level was set forth in the February 27, 2015 lease in order to induce a buyer to pay a purchase price for the Property substantially higher than its fair market value;

      b.    the falsity of the information in the offering brochure that, as of 2014, FS1 had a net worth of nearly $70 million, and an annual operating profit of nearly $15 million;

      c.    the fact that, from and after February 27, 2015, there was no reasonable expectation that the Property could or would generate net operating income at the levels represented in the offering circular, of $171,000 per year for the first five years, and even higher amounts in later lease years;

      d.    Frontier Star's and its affiliated entities' precarious financial position and potential bankruptcy, and Frontier Star's actual bankruptcy filing prior to the Closing date;

      e.    MJC's inability to make the minimum rent payments called for in the February 27, 2015 lease, and desire and need to attempt to negotiate a severe reduction in rent, from $171,000 per year to $70,000 per year;

      f.    the fact that MJC had no track record as a KFC franchisee; and/or

      g.    the failure of MJC and Frontier Star to pay the outstanding property taxes on the Property for 2014, or even the existence of MJC's and Frontier Star's promises to do so.

In their instant motion, VRE and Verdad now seek to designate as responsible third parties, pursuant to Tex. Civ. Prac. & Rem. Code § 33.004, MJC, FS1, LeVecke and another

SL 1937044.8

individual, Matt Langfield. Movants thus seek to shift responsibility for their own wrongful acts and omissions to these absent third parties, two of whom are in bankruptcy.

As discussed below, Movants' RTP Motion suffers from a number of significant flaws, and JMO therefore objects to it on multiple grounds.

## GROUNDS OF OBJECTION

### I.    SECTION 33.004 DOES NOT APPLY TO JMO'S BREACH OF CONTRACT CLAIM.

Chapter 33 of the Texas Civ. Prac. & Rem. Code applies only to causes of action based on tort or brought under the Deceptive Trade Practices-Consumer Protection Act (Subchapter E, Chapter 17, Business & Commerce Code). Texas Civ. Prac. & Rem. Code § 33.002. Section 33.002 makes no mention of actions for breach of contract. Accordingly, courts applying Texas law routinely hold that Chapter 33 is inapplicable to breach of contract actions. *See, e.g.*, *Nels Cary, Inc. v. Day*, 2008 U.S. Dist. LEXIS 15928, *5 (N.D. Tex. Feb. 29, 2008); *Doncaster v. Hernaiz*, 161 S.W.3d 594, 604 (Tex. App. 2005) ("Here, the underlying suit lies in contract, not in tort; therefore, the doctrine is not applicable"). Thus, as a starting point, Movants' RTP Motion is defective insofar as it seeks to designate responsible third parties for purposes of JMO's breach of contract claim.

### II.    SECTION 33.004 DOES NOT APPLY TO JMO'S FRAUDULENT MISREPRESENTION CLAIMS ASSERTED HERE.

Chapter 33 does away with joint and several liability, and provides for apportioning responsibility among parties and responsible third parties, only in certain types of actions – not in all cases. For instance, as addressed in part I above, Chapter 33 does not apply to breach of contract claims. And, Chapter 33 contains other exclusions as well.

For example, § 33.013(b)(2) of the Tex. Civ. Prac. & Rem. Code provides that a defendant may be jointly and severally liable to a claimant for all of the claimant's recoverable

6

damages, even if the percentage of fault attributed to that defendant is 50 percent or less, if "the defendant, with the specific intent to do harm to others, acted in concert with another person to engage in the conduct described in the following provisions of the Penal Code and in so doing proximately caused the damages legally recoverable by the claimant."

In *Pemex Exploracion Y Produccion v. BASF Corp.*, 2011 U.S. Dist. LEXIS 156655, **44-46 (S.D. Tex. Oct. 20, 2011), the court, in exploring the scope of § 33.004, described § 33.013(b) as containing exceptions to the application of § 33.004. This is a sensible reading of the statute: it serves no purpose to allocate responsibility in instances where a defendant will be jointly and severally liable in any event.5

One of the provisions of the Penal Code referenced in § 33.013(b)(2) – as subsection (K) thereof – is "Section 32.46 (securing execution of document by deception)." Section 32.46(a)(1) of the Tex. Penal Code provides: "A person commits an offense if, with intent to defraud or harm any person, he, by deception: causes another to sign or execute any document affecting property or services or the pecuniary interest of any person."6

---

5 We note that apportionment of responsibility among non-parties would not further a contribution analysis under Tex. Civ. Prac. & Rem. Code § 33.015, as that section addresses only contribution among jointly and severally liable *defendants*. As Movants concede in their motion, they do not seek to make the designated third parties defendants to this case.

6 "Deception," as used in § 32.46 of the Tex. Penal Code, is a broad concept, intended to cover any form of deception. *See, e.g., Mills v. State*, 722 S.W.2d 411, 416 (Tex. App. 1986). The meaning of that term includes, but is not limited to, the definition set forth in § 31.01(1) of the Tex. Penal Code – which, itself, is extremely broad and encompasses the kind of conduct at issue here. Among the types of deception falling within § 31.01(1) are:

(A) creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true;

(B) failing to correct a false impression of law or fact that is likely to affect the judgment of another in the transaction, that the actor previously created or confirmed by words or conduct, and that the actor does not now believe to be true;

7

SL 1937044.8

JMO's claims for fraudulent misrepresentation against Movants, set forth in Counts I and II of the Complaint, fall squarely within the provisions of § 32.46 of the Tex. Penal Code and § 33.013(b)(2) of the Tex. Civ. Prac. & Rem. Code. JMO alleges that, with intent to deceive, VRE and Verdad caused it to sign or execute documents affecting the Property at issue here and JMO's pecuniary interests, e.g., the Sale Contract and various closing documents.

Movants clearly acted in concert with others, as evidenced by the allegations in the Complaint against Defendants Trivanta, LLC and Tartan Realty Group, Inc., and by Movants' own assertions concerning the actions of the putative responsible third parties. And, the "specific intent to do harm" requirement is satisfied by JMO's allegations that Movants either must have formed the intent to unload the Property for an inflated value on an unsuspecting buyer after concluding it had been duped by their own seller, or been a party to a fraudulent scheme with their seller in the first instance.

We note that, under "Texas tort law, the 'responsible third party' is anything but. He is not really a 'party,' and he is not really 'responsible.' He has but one reason to exist: that is, to allow a liable defendant to avoid joint and several liability." "HOUSE BILL 4 SYMPOSIUM ISSUE: Responsible Third Parties," 46 Tex. L. Rev. 869, 870 (Summer, 2005) (footnotes omitted). Under § 33.004 as originally adopted, there were a number of procedural and substantive restrictions on who could be added as a responsible third party. However, those restrictions were removed in 2003 as part of sweeping "tort reform, leading to the present anomalous situation that, "[n]ow, anyone can be a responsible third party – even persons or entities that the plaintiff is forbidden to sue, even persons or entities outside the court's

---

(C)  preventing another from acquiring information likely to affect his judgment in the transaction. . . .

SL 1937044.8

jurisdiction, even persons or entities that may not exist." Id. at 880. Particularly under these circumstances, § 33.004 should not be read expansively, but rather confined to the plain meaning of its terms.

For all of the foregoing reasons, § 33.004 cannot be deemed to apply to JMO's claims for fraudulent misrepresentation asserted against Movants.

### III.    CHAPTER 33 DOES NOT APPLY TO JMO'S CLAIMS FOR PUNITIVE DAMAGES.

Even if § 33.004 were deemed to apply to JMO's fraud claims against Movants notwithstanding the points addressed in part II above, it nevertheless cannot be deemed to allow the designation of responsible third parties with respect to JMO's claims for punitive damages.

Section 33.002(c)(2) expressly excludes from the scope of Chapter 33 claims "for exemplary damages included in an action to which this chapter otherwise applies." *See Eisenstadt v. Tel. Elecs. Corp.*, 2008 U.S. Dist. LEXIS 77038, *7 (N.D. Tex. Sep. 30, 2008), citing Tex. Civ. Prac. & Rem. Code § 33.002(c)(2); *Gilcrease v. Garlock, Inc.*, 211 S.W.3d 448, 456-57 (Tex. App. 2006).[7]

JMO expressly has pleaded claims for punitive damages in connection with its fraudulent misrepresentation claims. Those claims do not fall within the scope of Chapter 33, and, under any circumstances, Movants cannot properly be allowed to designate responsible third parties with respect to JMO's claims for punitive damages.

### IV.    IN ANY EVENT, MOVANTS' RTP MOTION IS DFECTIVE IN ITS ENTIRETY FOR FAILURE TO ALLEGE FACTS SUFFICIENT TO SHOW HOW THE NON-PARTIES CAUSED OR CONTRIBUTED TO JMO'S INJURIES.

Under Tex. Civ. Prac. & Rem. Code § 33.004(g), the Court "shall grant leave to designate the person as a responsible third party" unless the objecting party establishes two

---

[7] Section 41.001(5) of the Tex. Civ. Prac. & Rem. Code makes clear that "exemplary damages" include "punitive damages."

SL 1937044.8

things: (1) that the "defendant did not plead sufficient facts concerning the alleged responsibility of the person to satisfy the pleading requirement of the Texas Rules of Civil Procedure;" and (2) that "after having been granted leave to replead, the defendant failed to plead sufficient facts concerning the alleged responsibility of the person to satisfy the pleading requirements of the Texas Rules of Civil Procedure."

A "responsible third party" is one who "is alleged to have caused or contributed to causing in any way the harm for which recovery of damages is sought, *whether by negligent act or omission, by any defective or unreasonably dangerous product, by other conduct or activity that violates an applicable legal standard, or by any combination of these*." Tex. Civ. Prac. & Rem. Code § 33.011(6) (emphasis added). Even acknowledging that Texas applies a liberal notice pleading standard, and that Movants contend the third parties may have supplied false information, the RTP Motion falls well short of alleging facts sufficient to show that the third parties acted or failed to act negligently, or violated an applicable legal standard.

As to the former – acting or failing to act negligently – Movants never describe what duty was owed by the third parties or how they failed to discharge it. Perhaps Movants believe the third parties had some obligation to exercise a certain level of diligence in tendering information to Movants, but they do not identify what diligence was required, or facts as to the manner in which the third parties failed to exercise it.[8]

Similarly, Movants do not identify any applicable legal standard the third parties violated by tendering false information to them. As evidenced by the elements of common law fraud and negligent misrepresentation claims, it is not enough simply to say something false. Rather, there

---

[8] As to one of the persons sought to be designated, Matt Langfield, Movants do not even identify who he is, or what role he played in the underlying facts, which is not clear from the pleadings filed to-date.

10

must be a false statement coupled with some breach of duty or mental state, and the hearer's ignorance of its falsity. *See, e.g., Tex. First Natl. Bank v. Ng*, 167 S.W.3d 842, 852 (Tex. App. 2005) (stating elements of fraudulent misrepresentation); *Johnson v. Baylor Univ.*, 188 S.W.3d 296, 302 (Tex. App. 2006) (stating elements of negligent misrepresentation).

Here, Movants do not allege they were ignorant of the falsity of the statements (or even concede the statements were false). Nor do they allege they relied on the third parties to supply true information. Nor, critically, do they even allege the third parties supplied the information to Movants with the intent or expectation that it would be communicated to JMO.

It may well be that Movants intend to make all of these arguments. But, as matters now stand, they have not. Accordingly, they have not pled facts sufficient to withstand Plaintiff's objection.

## CONCLUSION

Movants' efforts to designate responsible third parties with respect to JMO's breach of contract and fraudulent misrepresentations claims fail, because those claims fall outside the scope of § 33.004. In addition, JMO's claim for punitive damages also is outside the scope of § 33.004, even if its fraudulent misrepresentation claims otherwise fall within that statute. Accordingly, JMO respectfully requests that the Court deny the RTP Motion to the extent it seeks leave to designate responsible third parties with respect to those claims.

With respect to JMO's claims for negligent misrepresentation, such claims potentially may come within the coverage of § 33.004. However, Movants have failed to plead adequate facts to show that the third parties caused or contributed to cause JMO's substantial damages in the manner contemplated by Chapter 33. Accordingly, at this juncture, Movants should be afforded an opportunity to replead their position concerning designation of responsible third parties, following which if the defects addressed above remain, the RTP Motion should be

11

SL 1937044.8

denied. *See, e.g.*, *In re Smith*, 366 S.W.3d 282, 288 (Tex. App. 2012) (trial court without discretion to deny motion without first granting leave to replead; court's only options were to grant the motion or defer ruling on it while giving movants an opportunity to replead).

Respectfully submitted,

Janna Ward Clarke
State Bar No. 20844150
309 West 7th Street, Suite 1100
Fort Worth, TX 76102
(817) 335-1615
(817) 335-1603 (fax)
E-mail: jwc@bsjpc.com


Gerald P. Greiman, *Pro hac vice*
Ryan C. Hardy, *Pro hac vice*
SPENCER FANE LLP
1 N. Brentwood Blvd., Suite 1000
St. Louis, MO 63105
(314) 863-7733
(314) 862-4656 (fax)
E-mail: ggreiman@spencerfane.com
        rhardy@spencerfane.com


*Attorneys for Plaintiff*

SL 1937044.8

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 1ˢᵗ day of June, 2016, true and correct copies of the foregoing Plaintiff's Objection to VRE Chicago Eleven, LLC and Verdad Real Estate, Inc.'s Motion for Leave to Designate Responsible Third Parties, and proposed Order, were served on all counsel of record *via* the Court's electronic notification system, and also by electronic mail, as follows:

Walker C. Friedman, Esq.
Christian D. Tucker, Esq.
Friedman, Suder & Cooke, P.C.
604 E. 4th Street, Suite 200
Fort Worth Texas, 76102
wcf@fsclaw.com
tucker@fsclaw.com

*Attorneys for VRE Chicago Eleven, LLC and Verdad Real Estate, Inc.*

Thomas A. Culpepper, Esq.
Robin G. Bechtold, Esq.
Thompson, Coe, Cousins & Irons, LLP
700 N. Pearl Street, Twenty-Fifth Floor
Dallas, Texas 75201
tculpepper@thompsoncoe.com
rbechtold@thompsoncoe.com

*Attorneys for Trivanta, LLC and Tartan Realty Group, Inc.*

Daniel F. Shank, Esq.
Andrew R. Stubblefield, Esq.
Coats Rose, PC
14755 Preston Road, Suite 600
Dallas, Texas 75254
dshank@coatsrose.com
astubblefield@coatsrose.com

*Attorneys for CBRE Group, Inc. and CBRE, Inc.*

13

SL 1937044.8