IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JMO PROPERTY, LLC, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No. 4:16-cv-00074-A |
| | ) | |
| VRE CHICAGO ELEVEN, LLC, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

**PLAINTIFF'S OBJECTION TO DEFENDANTS TRIVANTA, LLC'S
AND TARTAN REALTY GROUP, INC.'S MOTION
<u>FOR LEAVE TO DESIGNATE RESPONSIBLE THIRD PARTIES</u>**

Janna Ward Clarke
State Bar No. 20844150
309 West 7th Street, Suite 1100
Fort Worth, TX 76102
(817) 335-1615
(817) 335-1603 (fax)
E-mail:   jwc@bsjpc.com


Gerald P. Greiman, *Pro hac vice*
Ryan C. Hardy, *Pro hac vice*
SPENCER FANE LLP
1 N. Brentwood Blvd., Suite 1000
St. Louis, MO 63105
(314) 863-7733
(314) 862-4656 (fax)
E-mail:   ggreiman@spencerfane.com
          rhardy@spencerfane.com

*Attorneys for Plaintiff*

SL 1939586.5

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................... i
FACTUAL BACKGROUND .....................................................................................................1
GROUNDS OF OBJECTION .....................................................................................................6
I. TEXAS LAW DOES NOT APPLY TO JMO'S CLAIMS AGAINST MOVANTS. ...............................................................................................................6
II. SECTION 33.004 DOES NOT APPLY TO JMO'S FRAUDULENT MISREPRESENTATION CLAIMS ASSERTED HERE. ...............................................8
III. CHAPTER 33 DOES NOT APPLY TO JMO'S CLAIMS FOR PUNITIVE DAMAGES. .......................................................................................................10
IV. IN ANY EVENT, MOVANTS' RTP MOTION IS DEFECTIVE IN ITS ENTIRETY FOR FAILURE TO ALLEGE FACTS SUFFICIENT TO SHOW HOW THE NON-PARTIES CAUSED OR CONTRIBUTED TO JMO'S INJURIES. ..........................................................................................................11
CONCLUSION .........................................................................................................................13
CERTIFICATE OF SERVICE ..................................................................................................15

SL 1939586.5

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Doncaster v. Hernaiz,*
  161 S.W.3d 594 (Tex. App. 2005) ...................................................................................8

*Eisenstadt v. Tel. Elecs. Corp.,*
  2008 U.S. Dist. LEXIS 77038 (N.D. Tex. Sep. 30, 2008) ..............................................10

*Gilcrease v. Garlock, Inc.,*
  211 S.W.3d 448 (Tex. App. 2006) .................................................................................11

*Harrison v. Proctor & Gamble Co.,*
  2007 U.S. Dist. LEXIS 8988 .............................................................................................6

*Schein v. Stromboe,*
  102 S.W.3d 675 (Tex. 2012) ........................................................................................6, 7

*In re Smith,*
  366 S.W.3d 282 (Tex. App. 2012) .................................................................................13

*In re Jason Dominic LeVecke,*
  No. 2:16-bk-00639-DPC (Bkrtcy. D. Ariz. Jan. 25, 2016) ..............................................4

*Johnson v. Baylor Univ.,*
  188 S.W.3d 296 (Tex. App. 2006) .................................................................................12

*Marchesani v. Pellerin-Milnor Corp.,*
  269 F.3d 481 (5th Cir. 2001) ............................................................................................6

*Mills v. State,*
  722 S.W.2d 411 (Tex. App. 1986) ...................................................................................9

*Nels Cary, Inc. v. Day,*
  2008 U.S. Dist. LEXIS 15928 (N.D. Tex. Feb. 29, 2008) ................................................8

*Pemex Exploracion Y Produccion v. BASF Corp.,*
  2011 U.S. Dist. LEXIS 156655 .........................................................................................8

*Tex. First Natl. Bank v. Ng,*
  167 S.W.3d 842 (Tex. App. 2005) .................................................................................12

**STATUTES**

28 U.S.C. § 1332 ....................................................................................................................6

Tex. Civ. Prac. & Rem. Code Chapter 33 ..........................................................8, 10, 11, 13

Tex. Civ. Prac. & Rem. Code § 33.002(c)(2) ................................................................10, 11

Tex. Civ. Prac. & Rem. Code § 33.004 ........................................................................passim

Tex. Civ. Prac. & Rem. Code § 33.004(g) ........................................................................................11

Tex. Civ. Prac. & Rem. Code § 33.011(6) ........................................................................................11

Tex. Civ. Prac. & Rem. Code § 33.013(b) ..........................................................................................8

Tex. Civ. Prac. & Rem. Code § 33.013(b)(2) ..................................................................................8, 9

Tex. Civ. Prac. & Rem. Code § 33.015 ...............................................................................................8

Tex. Civ. Prac. & Rem. Code § 41.001(5) ........................................................................................11

Tex. Penal Code § 31.01(1) .................................................................................................................9

Tex. Penal Code § 32.46 ......................................................................................................................9

Tex. Penal Code § 32.46(a)(1) .............................................................................................................9

## OTHER AUTHORITIES

"HOUSE BILL 4 SYMPOSIUM ISSUE: Responsible Third Parties," 46 Tex. L. Rev. 869, 870 (Summer, 2005) ............................................................................................10

Restatement (Second) of Conflicts of Laws (the "Restatement") ......................................................6

### PLAINTIFF'S OBJECTION TO DEFENDANTS TRIVANTA, LLC'S AND TARTAN REALTY GROUP, INC.'S MOTION FOR LEAVE TO DESIGNATE RESPONSIBLE THIRD PARTIES

Plaintiff JMO Property, LLC ("JMO") submits the following as its Objection to Defendants Trivanta, LLC's ("Trivanta") and Tartan Realty Group, Inc.'s ("Tartan") Motion for Leave to Designate Responsible Third Parties (the "RTP Motion"). As discussed below, the statute on which Trivanta and Tartan (collectively, "Movants") rely, § 33.004 of the Tex. Civ. Prac. & Rem. Code, is inapplicable to the claims asserted against them, because Texas law does not apply to those claims.

Further, even if Texas law were deemed applicable to Plaintiff's claims asserted in this action, certain of those claims are excluded from the scope of § 33.004. And, as to other of Plaintiff's claims, to which § 33.004 might apply, Trivanta and Tartan have failed to plead sufficient facts concerning the alleged responsibility of the persons sought to be designated to satisfy the pleading requirements of the Texas Rules of Civil Procedure.

### FACTUAL BACKGROUND

The factual background of this action, as alleged in JMO's Complaint (Doc. #1, "Compl."), may be summarized as follows. In 2014, Verdad Real Estate, Inc. ("Verdad") – a large developer of commercial properties leased to single tenants such as fast food restaurants – acquired the property at issue in this case (the "Property"), along with other similar properties, from an entity owned and/or controlled by Jason LeVecke. (Compl. ¶¶ 2-3, 11-15). The Property is located at 10200 S. Halsted Street, in Chicago. (Compl. ¶¶ 15-16).

Verdad, through VRE Chicago Eleven, LLC ("VRE"),[1] paid $1,832,500 for the Property in April, 2014. At the time, the Property was leased to a LeVecke entity, Frontier Star, LLC

---

[1] Verdad effected the acquisition of the Property, as well as the ensuing sale, through a wholly owned subsidiary created by it, VRE, which was controlled entirely by Verdad, inadequately

("Frontier Star"), for operation as a Kentucky Fried Chicken ("KFC") restaurant, under a lease dated in March, 2014. (Compl. ¶¶ 15-16). Less than a year later, in February, 2015, VRE and Frontier Star terminated the March, 2014 lease, and VRE entered into a new lease with another LeVecke entity, MJC Holdings 123, LLC ("MJC") (the "February 2015 Lease"), guaranteed by another LeVecke entity, Frontier Star 1, LLC ("FS1"), as well as by LeVecke personally. (Compl. ¶¶ 17, 19). The February 2015 Lease provided for payment of rent in the amount of $171,000 per year (for the first five years, and higher after that), which was substantially higher than the rent payable under the prior lease, and was unsustainable in light of the actual and expected volume of sales generated by the KFC restaurant on the Property. (Compl. ¶ 22).[2]

Verdad and VRE then proceeded to offer the Property for sale at a price of $2,631,000, which was 40 percent more than they had paid for the Property a year earlier, and marketed it to investors largely on the basis of it supposedly reflecting a capitalization rate of 6.5 percent, based on the offering price and the representation that it would generate rental income of $171,000 per year. (Compl. ¶ 25 and Exs. 2 and 3 thereto). Verdad and VRE also touted the fact that the 2015 Lease was guaranteed by FS1, and circulated financial information representing that, as of 2014, FS1 had a net worth of $70 million and annual operating profits of $14.9 million. (Id.).

Verdad and VRE retained Movants to market the Property, along with other Chicago-area properties Verdad and VRE acquired from LeVecke and/or entities owned or controlled by him.

---

capitalized, and had no separate existence from Verdad. Jason Keen, a principal of Verdad and one of the six "team members" featured on Verdad's website, is the manager of VRE. Verdad and VRE are the alter ego of one another. (Compl. ¶¶ 13-14).

[2] VRE and Verdad allege in their Answer ("VRE/Verdad Ans," Doc. #32), at ¶ 17, that the rent rates for the Property under the February 27, 2015 lease were the same as the rent rates under the March, 2014 lease. To the extent that is so, it is of no significance to JMO's claims in that VRE's and Verdad's Answer also makes clear that the March, 2014 lease was to be effective only upon VRE's acquisition of the Property. (VRE/Verdad Ans. ¶ 16). What is significant, for purposes of JMO's claims, is the difference between the rent rates to be charged after VRE's acquisition of the Property, as compared with the rent being paid pre-acquisition.

(Compl. ¶ 24). Movants marketed the Property, in part, by distributing the brochure and offering circular attached to the Complaint as Exhibits 2 and 3, and which contained multiple and material misrepresentations, as further described below.

On June 29, 2015, JMO and VRE entered into a Purchase and Sale Agreement ("Sale Contract"), pursuant to which JMO agreed to purchase the Property for $2,485,000 – which was $652,500, or 35 percent, more than VRE paid for the Property the previous year. The transaction closed on July 30, 2015. (Compl. ¶¶ 29, 34).

In August, 2015, shortly after the closing of the sale – and, indeed, in one of MJC's (the tenant) very first communications with JMO following JMO becoming its landlord at the Property – MJC told JMO it would not be able to make its minimum rent payments, and attempted to negotiate a severe rent reduction, from $171,000 to $70,000 per year. MJC, in fact, did not make its full August, 2015 minimum rent payment, and has made no rent payments for September, 2015 through the present. (Compl. ¶¶ 36-37).[3]

Significantly, on or about July 27, 2015 – three days prior to the closing of the Sale Contract, which occurred July 30, 2015 – Frontier Star filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. That bankruptcy case remains pending in the United States Bankruptcy Court for the District of Arizona. (Compl. ¶ 32).

Verdad – itself and through several subsidiaries – is a creditor of Frontier Star and received notice of Frontier Star's bankruptcy. Verdad and VRE knew of Frontier Star's and its affiliated entities' precarious financial position and potential bankruptcy, as well as Frontier Star's actual bankruptcy filing, prior to the date on which VRE and JMO closed on the sale of

---

[3] In order to mitigate its damages, JMO has been required to take action, and incur expenses, to evict MJC from the Property and seek a replacement tenant for the Property. JMO now has been able to re-lease the Property, but has only been able to secure a tenant having the ability and willingness to pay rent in the amount of $75,600 per year. (Compl. ¶¶ 39-40).

the Property under the Sale Contract, but did not disclose those facts to JMO. (Compl. ¶¶ 32-33, 41).[4]

On November 17, 2015, FS1 also filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, and that case also remains pending in the United States Bankruptcy Court for the District of Arizona. (Compl. ¶ 38). On or about January 25, 2016, LeVecke filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code. That bankruptcy case remains pending in the United States Bankruptcy Court for the District of Arizona. See *In re Jason Dominic LeVecke*, No. 2:16-bk-00639-DPC (Bkrtcy. D. Ariz. Jan. 25, 2016).

Based on the foregoing, there can be little question that JMO has been victimized by fraud. The only real question is whether Defendants were involved in a fraudulent scheme that predated Verdad's and VRE's acquisition of the Property and other similar properties from LeVecke and his entities, or whether Verdad and VRE were duped by LeVecke, and a scheme then was hatched to unload the properties on unsuspecting buyers for inflated prices.

JMO asserts claims for fraud in the inducement as well as negligent misrepresentation and, in each instance, asserts both affirmative misrepresentations and omissions as the basis of its claims. (Compl. Counts I-IV).

The affirmative misrepresentations alleged in the Complaint may be summarized as follows (Compl. ¶ 45):

> a. the brochure used to market the Property falsely represented that FS1 had substantial financial strength; that, as of 2014, FS1 had a net worth of nearly $70 million; and that, as of 2014, FS1 had an annual operating profit of nearly $15 million;

---

[4] VRE and Verdad admit, in ¶ 33 of their Answer, that they learned of Frontier Star's bankruptcy filing on July 29, 2015 – which was prior to the closing of the sale of the Property to JMO.

   b. the offering circular for the Property falsely represented that Frontier Star was, and would be, the tenant of the Property; that the tenant of the Property operated 22 KFC restaurants in the Chicago Market; and that the tenant of the Property was one of the largest multi-unit franchise restaurant operators with over 200 locations; and/or

   c. the offering circular for the Property falsely represented that the Property was generating, and would in the future generate, net operating income in the amount of $171,000 per year for the first five years, with net operating income for years 16-20 of the lease rising to $227,601 per year.

The omissions alleged in the Complaint may be summarized as follows (Compl. ¶ 53):

   a. the February 27, 2015 lease provided for payment of rent at a level higher than the rent under the previous lease, higher than the fair market rental value of the Property, and higher than what a KFC franchisee operating at the Property could expect to be able to pay out of operating revenues, and the artificially high rent level was set forth in the February 27, 2015 lease in order to induce a buyer to pay a purchase price for the Property substantially higher than its fair market value;

   b. the falsity of the information in the offering brochure that, as of 2014, FS1 had a net worth of nearly $70 million, and an annual operating profit of nearly $15 million;

   c. the fact that, from and after February 27, 2015, there was no reasonable expectation that the Property could or would generate net operating income at the levels represented in the offering circular, of $171,000 per year for the first five years, and even higher amounts in later lease years;

   d. Frontier Star's and its affiliated entities' precarious financial position and potential bankruptcy, and Frontier Star's actual bankruptcy filing prior to the Closing date;

   e. MJC's inability to make the minimum rent payments called for in the February 27, 2015 lease, and desire and need to attempt to negotiate a severe reduction in rent, from $171,000 per year to $70,000 per year;

   f. the fact that MJC had no track record as a KFC franchisee; and/or

   g. the failure of MJC and Frontier Star to pay the outstanding property taxes on the Property for 2014, or even the existence of MJC's and Frontier Star's promises to do so.

In their instant motion, Movants now seek to designate as responsible third parties, pursuant to Tex. Civ. Prac. & Rem. Code § 33.004, MJC, FS1, LeVecke and another individual,

Matt Langfield. Movants thus seek to shift responsibility for their own wrongful acts and omissions to these absent third parties, two of whom are in bankruptcy.

As discussed below, Movants' RTP Motion suffers from a number of significant flaws, and JMO therefore objects to it on multiple grounds.

## **GROUNDS OF OBJECTION**

### **I. TEXAS LAW DOES NOT APPLY TO JMO'S CLAIMS AGAINST MOVANTS.**

This matter is properly before the Court pursuant to 28 U.S.C. § 1332 (diversity jurisdiction). A federal court sitting in diversity applies the substantive law of the forum state, including that state's choice-of-law principles. *See, e.g., Marchesani v. Pellerin-Milnor Corp.*, 269 F.3d 481, 485 (5th Cir. 2001). Texas follows the Restatement (Second) of Conflicts of Laws (the "Restatement") in determining which state's law applies to torts. *See, e.g., Schein v. Stromboe*, 102 S.W.3d 675, 696 & n.81 (Tex. 2012).

Other defendants in this litigation have invoked a Texas choice-of-law provision in the Sale Contract as a basis for applying § 33.004 here. Movants attempt to do the same, but ignore the fact that they are not parties to the Sale Contract. The named parties to the Sale Contract are JMO and VRE.[5] (Compl. Ex. 4, p. 1). The Sale Contract further includes a "No Third Parties Benefitted" provision, specifying that "[t]he parties hereto do not intend to confer any benefit on any person, firm, or corporation other than the parties to this Contract, and their respective successors and assigns." (Compl. Ex. 4, p. 19, ¶ 14.7). A non-party, non-beneficiary to a contract may not rely on a choice-of-law provision contained therein; instead, the choice-of-law principles of the forum state apply. *See, e.g., Harrison v. Proctor & Gamble Co.*, 2007 U.S. Dist. LEXIS 8988 **12-14 (N.D. Tex. Feb. 8, 2007).

---

[5] Because it is the alter ego of VRE, Verdad also is a party to the Sale Agreement.

The Restatement calls for courts to analyze the following factors in determining which state's law applies to tort claims such as those JMO alleges against Movants here: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Stromboe*, 102 S.W.3d at 696.

JMO is a Missouri limited liability company whose members are residents of Missouri. (Compl. ¶ 1). The Property is located in Illinois. (Compl. ¶ 15). The injury therefore occurred in Missouri or Illinois, not in Texas.

Movants' conduct, causing Plaintiff's damages, likewise is unlikely to have occurred in Texas. Tartan is an Illinois corporation with its principal place of business in Illinois. (Compl. ¶ 6). Nothing in the pleadings to-date suggests it acted or failed to act in Texas. Trivanta admittedly is a Texas corporation, and may have acted or failed to act in Texas; however, under the totality of the circumstances, that should not prove dispositive.

Likewise, the domicil, residence, places of incorporation, and places of business of the parties point away from Texas. Again, JMO and its members are residents of Missouri, and JMO was formed under Missouri law. Tartan is an Illinois corporation with its principal place of business in Illinois. Only Trivanta is a Texas corporation having a place of business in Texas.

Finally, to the extent the relationship between JMO and Movants is centered anywhere, it is centered in Illinois, where the Property is located. In no way can it be said the parties' relationship is centered in Texas.

In sum, because Texas law will not apply to JMO's claims against Movants, they may not properly invoke § 33.004 with respect to those claims.

## II. SECTION 33.004 DOES NOT APPLY TO JMO'S FRAUDULENT MISREPRESENTATION CLAIMS ASSERTED HERE.

Alternatively, even if Texas law is deemed applicable, there are further reasons why Movants' attempt to invoke § 33.004 here is defective.

As a starting point, Chapter 33 does away with joint and several liability, and provides for apportioning responsibility among parties and responsible third parties, only in certain types of actions – not in all cases. For instance, Chapter 33 does not apply to breach of contract claims. *See, e.g., Nels Cary, Inc. v. Day,* 2008 U.S. Dist. LEXIS 15928, *5 (N.D. Tex. Feb. 29, 2008); *Doncaster v. Hernaiz,* 161 S.W.3d 594, 604 (Tex. App. 2005) ("Here, the underlying suit lies in contract, not in tort; therefore, the doctrine is not applicable"). And, Chapter 33 contains other exclusions as well.

For example, § 33.013(b)(2) of the Tex. Civ. Prac. & Rem. Code provides that a defendant may be jointly and severally liable to a claimant for all of the claimant's recoverable damages, even if the percentage of fault attributed to that defendant is 50 percent or less, if "the defendant, with the specific intent to do harm to others, acted in concert with another person to engage in the conduct described in the following provisions of the Penal Code and in so doing proximately caused the damages legally recoverable by the claimant."

In *Pemex Exploracion Y Produccion v. BASF Corp.,* 2011 U.S. Dist. LEXIS 156655, **44-46 (S.D. Tex. Oct. 20, 2011), the court, in exploring the scope of § 33.004, described § 33.013(b) as containing exceptions to the application of § 33.004. This is a sensible reading of the statute: it serves no purpose to allocate responsibility in instances where a defendant will be jointly and severally liable in any event.[6]

---

[6] We note that apportionment of responsibility among non-parties would not further a contribution analysis under Tex. Civ. Prac. & Rem. Code § 33.015, as that section addresses only

8

One of the provisions of the Penal Code referenced in § 33.013(b)(2) – as subsection (K) thereof – is "Section 32.46 (securing execution of document by deception." Section 32.46(a)(1) of the Tex. Penal Code provides: "A person commits an offense if, with intent to defraud or harm any person, he, by deception: causes another to sign or execute any document affecting property or services or the pecuniary interest of any person."[7]

JMO's claims for fraudulent misrepresentation against Movants, set forth in Counts I and II of the Complaint, fall squarely within the provisions of § 32.46 of the Tex. Penal Code and § 33.013(b)(2) of the Tex. Civ. Prac. & Rem. Code. JMO alleges that, with intent to deceive, Movants caused it to sign or execute documents affecting the Property at issue here and JMO's pecuniary interests, *e.g.*, the Sale Contract and various closing documents.

Movants clearly acted in concert with others, as evidenced by the allegations in the Complaint against VRE and Verdad, and by Movants' own assertions concerning the actions of the putative responsible third parties. And, the "specific intent to do harm" requirement is satisfied by JMO's allegations that Defendants either must have decided to unload the Property

---

contribution among jointly and severally liable *defendants*. Movants do not seek to make the designated third parties defendants to this case.

[7] "Deception," as used in § 32.46 of the Tex. Penal Code, is a broad concept, intended to cover any form of deception. *See, e.g., Mills v. State*, 722 S.W.2d 411, 416 (Tex. App. 1986). The meaning of that term includes, but is not limited to, the definition set forth in § 31.01(1) of the Tex. Penal Code – which, itself, is extremely broad and encompasses the kind of conduct at issue here. Among the types of deception falling within § 31.01(1) are:
    (A) creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true;

    (B) failing to correct a false impression of law or fact that is likely to affect the judgment of another in the transaction, that the actor previously created or confirmed by words or conduct, and that the actor does not now believe to be true;

    (C) preventing another from acquiring information likely to affect his judgment in the transaction. . . .

9

for an inflated value on an unsuspecting buyer after concluding VRE and Verdad had been duped by their own seller, or been parties to a fraudulent scheme in the firsts instance.

We note that, under "Texas tort law, the 'responsible third party' is anything but. He is not really a 'party,' and he is not really 'responsible.' He has but one reason to exist: that is, to allow a liable defendant to avoid joint and several liability." "HOUSE BILL 4 SYMPOSIUM ISSUE: Responsible Third Parties," 46 Tex. L. Rev. 869, 870 (Summer, 2005) (footnotes omitted). Under § 33.004 as originally adopted, there were a number of procedural and substantive restrictions on who could be added as a responsible third party. However, those restrictions were removed in 2003 as part of sweeping "tort reform, leading to the present anomalous situation that, "[n]ow, anyone can be a responsible third party – even persons or entities that the plaintiff is forbidden to sue, even persons or entities outside the court's jurisdictions, even persons or entities that may not exist." *Id.* at 880. Particularly under these circumstances, § 33.004 should not be read expansively, but rather confined to the plain meaning of its terms.

For all of the foregoing reasons, § 33.004 cannot be deemed to apply to JMO's claims for fraudulent misrepresentation asserted against Movants.

### III. CHAPTER 33 DOES NOT APPLY TO JMO'S CLAIMS FOR PUNITIVE DAMAGES.

Even if § 33.004 were deemed to apply to JMO's fraud claims against Movants notwithstanding the points addressed in part II above, it nevertheless cannot be deemed to allow the designation of responsible third parties with respect to JMO's claims for punitive damages.

Section 33.002(c)(2) expressly excludes from the scope of Chapter 33 claims "for exemplary damages included in an action to which this chapter otherwise applies." *See Eisenstadt v. Tel. Elecs. Corp.*, 2008 U.S. Dist. LEXIS 77038, *7 (N.D. Tex. Sep. 30, 2008),

citing Tex. Civ. Prac. & Rem. Code § 33.002(c)(2); *Gilcrease v. Garlock, Inc.*, 211 S.W.3d 448, 456-57 (Tex. App. 2006).[8]

JMO expressly has pleaded claims for punitive damages in connection with its fraudulent misrepresentation claims. Those claims do not fall within the scope of Chapter 33, and, under any circumstances, Movants cannot properly be allowed to designate responsible third parties with respect to JMO's claims for punitive damages.

### IV. IN ANY EVENT, MOVANTS' RTP MOTION IS DEFECTIVE IN ITS ENTIRETY FOR FAILURE TO ALLEGE FACTS SUFFICIENT TO SHOW HOW THE NON-PARTIES CAUSED OR CONTRIBUTED TO JMO'S INJURIES.

Under Tex. Civ. Prac. & Rem. Code § 33.004(g), the Court "shall grant leave to designate the person as a responsible third party" unless the objecting party establishes two things: (1) that the "defendant did not plead sufficient facts concerning the alleged responsibility of the person to satisfy the pleading requirement of the Texas Rules of Civil Procedure;" and (2) that "after having been granted leave to replead, the defendant failed to plead sufficient facts concerning the alleged responsibility of the person to satisfy the pleading requirements of the Texas Rules of Civil Procedure."

A "responsible third party" is one who "is alleged to have caused or contributed to causing in any way the harm for which recovery of damages is sought, *whether by negligent act or omission, by any defective or unreasonably dangerous product, by other conduct or activity that violates an applicable legal standard, or by any combination of these*." Tex. Civ. Prac. & Rem. Code § 33.011(6) (emphasis added). Even acknowledging that Texas applies a liberal notice pleading standard, and that Movants contend the third parties may have supplied false

---

[8] Section 41.001(5) of the Tex. Civ. Prac. & Rem. Code makes clear that "exemplary damages" include "punitive damages."

information, the RTP Motion falls well short of alleging facts sufficient to show that the third parties acted or failed to act negligently, or violated an applicable legal standard.

As to the former – acting or failing to act negligently – Movants never describe what duty was owed by the third parties or how they failed to discharge it. Perhaps Movants believe the third parties had some obligation to exercise a certain level of diligence in tendering information to Movants and/or Verdad and VRE, but they do not identify what diligence was required, or facts as to the manner in which the third parties failed to exercise it.[9]

Similarly, Movants do not identify any applicable legal standard the third parties violated by tendering false information. As evidenced by the elements of common law fraud and negligent misrepresentation claims, it is not enough simply to say something false. Rather, there must be a false statement coupled with some breach of duty or mental state, and the hearer's ignorance of its falsity. *See, e.g., Tex. First Natl. Bank v. Ng*, 167 S.W.3d 842, 852 (Tex. App. 2005) (stating elements of fraudulent misrepresentation); *Johnson v. Baylor Univ.*, 188 S.W.3d 296, 302 (Tex. App. 2006) (stating elements of negligent misrepresentation).

Here, Movants do not allege they were ignorant of the falsity of the statements (or even concede the statements were false). Nor do they allege they relied on the third parties to supply true information. Nor, critically, do they even allege the third parties supplied the information with the intent or expectation that it would be communicated to JMO.

It may well be that Movants intend to make all of these arguments. But, as matters now stand, they have not. Accordingly, they have not pled facts sufficient to withstand Plaintiff's objection.

---

[9] As to one of the persons sought to be designated, Matt Langfield, Movants do not even identify who he is, or what role he played in the underlying facts, which is not clear from the pleadings filed to-date.

## CONCLUSION

In sum, Movants may not designate responsible third parties because Texas law does not apply to JMO's claims against Movants. The Court should deny the RTP Motion entirely on that basis.

Alternatively, if Texas law is deemed applicable, Movants' efforts to designate responsible third parties with respect to JMO's fraudulent misrepresentation claims fail because those claims fall outside the scope of § 33.004. In addition, JMO's claim for punitive damages also is outside the scope of § 33.004, even if its fraudulent misrepresentation claims otherwise fall within that statute. Accordingly, JMO requests that the Court deny the RTP Motion to the extent it seeks leave to designate responsible third parties with respect to those claims.

As to JMO's claims for negligent misrepresentation, such claims potentially may come within the coverage of § 33.004 – if, and only if, Texas law is deemed applicable. However, Movants have failed to plead adequate facts to show that the third parties caused or contributed to cause JMO's substantial damages in the manner contemplated by Chapter 33. Accordingly, at this juncture, Movants should be afforded an opportunity to replead their position concerning designation of responsible third parties, following which if the defects addressed above remain, the RTP Motion should be denied. *See, e.g., In re Smith*, 366 S.W.3d 282, 288 (Tex. App. 2012) (trial court without discretion to deny motion without first granting leave to replead; court's only options were to grant the motion or defer ruling on it while giving movants an opportunity to replead).

Respectfully submitted,

*/s/ Janna Ward Clarke*

Janna Ward Clarke
State Bar No. 20844150
309 West 7th Street, Suite 1100
Fort Worth, TX 76102
(817) 335-1615
(817) 335-1603 (fax)
E-mail      jwc@bsjpc.com


Gerald P. Greiman, *Pro hac vice*
Ryan C. Hardy, *Pro hac vice*
SPENCER FANE LLP
1 N. Brentwood Blvd., Suite 1000
St. Louis, MO 63105
(314) 863-7733
(314) 862-4656 (fax)
E-mail:   ggreiman@spencerfane.com
          rhardy@spencerfane.com

*Attorneys for Plaintiff*

SL 1939586.5

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this ___3rd___ day of June, 2016, true and correct copies of the foregoing Plaintiff's Objection to Trivanta, LLC's and Tartan Realty Group, Inc.'s Motion for Leave to Designate Responsible Third Parties, and proposed Order, were served on all counsel of record *via* the Court's electronic notification system, and also by electronic mail, as follows:

Walker C. Friedman, Esq.
Christian D. Tucker, Esq.
Friedman, Suder & Cooke, P.C.
604 E. 4th Street, Suite 200
Fort Worth Texas, 76102
wcf@fsclaw.com
tucker@fsclaw.com

*Attorneys for VRE Chicago Eleven, LLC and Verdad Real Estate, Inc.*

Thomas A. Culpepper, Esq.
Robin G. Bechtold, Esq.
Thompson, Coe, Cousins & Irons, LLP
700 N. Pearl Street, Twenty-Fifth Floor
Dallas, Texas 75201
tculpepper@thompsoncoe.com
rbechtold@thompsoncoe.com

*Attorneys for Trivanta, LLC and Tartan Realty Group, Inc.*

Daniel F. Shank, Esq.
Andrew R. Stubblefield, Esq.
Coats Rose, PC
14755 Preston Road, Suite 600
Dallas, Texas 75254
dshank@coatsrose.com
astubblefield@coatsrose.com

*Attorneys for CBRE Group, Inc. and CBRE, Inc.*

_/s/ Jenna Clarke_____